Jones, Senior Judge,
dissenting:
It is true this is an “as is, where is” contract, but its provisions are entirely different from any contract heretofore presented to the court.
The “as is, where is” clause in the instant contract is found in the printed provisions under the heading—
“GENERAL SALE TERMS AND CONDITIONS.”
Immediately following these provisions are some typewritten special provisions headed—
*526 I quote the following paragraph from the first page of these typed provisions of the contract:
20. Adjustment for Variation in Quantity: Amy variation between the quantity or weight listed for any item and the quantity or weight of such item tendered or delivered to the Purchaser will be adjusted on the basis of the unit price quoted for such items; but no adjustment for such variation will be made where an award is made on a “price for the lot” basis. When property is sold on a unit price basis, the Government reserves the right to vary the quantity tendered or delivered to the Purchaser by 10%. If the Government tenders or delivers a quantity up to 10% in excess of that stated in the Invitation to Bid, the Purchaser agrees to accept such quantity and pay the Government therefor at the unit price set forth m this contract. If the Government tenders or delivers a quantity less than that stated in the Invitation to Bid, the Purchaser agrees to accept the quantity tendered or delivered unless the variation exceeds 10% of the quantity stated in the Invitation to bid. In such event of a shortage, the Government will refund the Purchaser the difference between the qua/ntity paid for and the quantity delivered, calculated upon the basis of the unit price set forth in this contract. [Emphasis supplied.]
It is hornbook law that a special provision controls a general, if in the same contract. This provision for adjustment clearly applies since the property was sold on a unit price basis, as will be seen from this quotation which is included in both the invitation to bid and the contract:

*527 Tims, it will be seen that this was a unit price contract with a specified unit price. Under the provisions of paragraph 20, quoted above, it was stipulated that if there was a variation of more than 10 percent in quantity there should be an adjustment.
There is no possible justification for saying that the specific exception as to quantity applies only to the number of rolls. It definitely applies to the quantity shipped. Provision No. 20 quoted above is definitely not limited to the number of rolls. It applies to quantity in any form without any limitation whatever. The signed contract called for the shipment of 128,800 feet of film. The quantity actually shipped was 32,200 feet of film. If this does not constitute more than 10 percent variation in the quantity shipped then I have studied arithmetic in vain.
It will also be noted from the provision last quoted above that the sale was on a unit price basis with 400 feet designated for each unit and that the estimate applied only to the number of rolls, but that the amount of footage in each roll or unit was definitely specified. The defendant emphasizes the provision in the contract that the purchaser was warned to inspect the property. These sales were nationally advertised and the plaintiffs were more than 2,000 miles distant. The entire contract, including the noncontroversial items, was for less than $2,000 and the controversial items for less than $1,000.
Even if the plaintiffs had seen fit to employ an expert on films to inspect the property, it would have apparently been very difficult to determine anything definite in packaged material of this kind, especially as to the length of a film enclosed in a package.
Neither the pleadings nor the brief disclosed how these films were packaged. Was an inspector supposed to unwrap each of the 322 units and measure the lengths of each roll ?
Attention is also called to the fact that item 11 of this particular contract, though not directly in issue here, contained provision for 28 units of 100-foot film. It seems altogether possible that the shipping clerks made a mistake and filled item 12 with units off the 100-foot pile. If this is true, *528 an inspection would not have been helpful because an inspector would probably not be permitted to direct the actual loading of the packages.
It is asserted by the plaintiffs in their brief that they received a shipment, designated item 10, which consisted of 400-foot rolls. This is not denied by the defendant. The admitted facts indicate that it was a loading clerk’s mistake. He must have loaded item 12 from the wrong stack. Must the distant purchaser be completely responsible for errors in which he had no part?
According to the pleadings and briefs, the S22 rolls of 100-foot film included in item 12 were absolutely worthless to plaintiffs.
A careful reading of the special contract provision for adjustment, when laid alongside the contract descriptions of item 12 which definitely state that the item contains 400-foot rolls, and which descriptions then give the number of rolls as estimated by the word “estimate” in this provision, leads to the conclusion that the word estimate does not apply to the length of the film but only to the number of rolls.
The “as is, where is” provision of the contract is a strong one and we have repeatedly held that ordinarily the purchaser takes his chance on the quality of the goods and the quantity as well. But as indicated in Standard Magnesium Corp. v. United States, 241 F. 2d 677 (10th Cir. 1957), and as was indicated in United States v. Silverton, 200 F. 2d 824, 828 (1st Cir. 1952), if the variation is so extreme as to make the situation a ridiculous one, the buyer would be protected.
At any rate, the specific provisions of the contract quoted above clearly lift this case out of the classification of similar contracts heretofore considered by this and other courts and these provisions call for a different conclusion and result.
The wrong type of film was shipped. The discrepancy was not discovered until after finally being received at destination. The film was worthless for the purposes purchased. Should plaintiffs have been bound if the film had only been 50 feet long or even 10 feet long ? The line must be drawn somewhere. The provisions of paragraph 20 of the contract *529 quoted above were clearly applicable Here since there was more than a 10 percent variation in the quantity delivered under a unit price contract.
The allegations and facts as disclosed by the pleadings and briefs, if they tend to indicate anything, would rather indicate that the mistake was probably made by a shipping clerk in loading the wrong packages.
I would deny defendant’s motion and grant plaintiffs’ motion for summary judgment. If this is not to be done, then both motions should be overruled and the facts determined as to who is responsible for this manifest mistake.